IN THE MATTER OF WILLIAM J. WOODHEAD, Jr.,
ATTORNEY AND COUNSELLOR-AT-LAW.

Argued March 8, 1954—Decided March 22, 1954.

(1)

*Mr. Leon Gerofsky,* County Prosecutor of Somerset County, argued the cause for the Ethics and Grievance Committee for Somerset County.

*Mr. William J. Woodhead, Jr.,* argued *pro se.*

PER CURIAM. William J. Woodhead, Jr., was admitted as an attorney-at-law in November 1914, and as a counsellor-at-law in June 1921, and for many years maintained his law office in Peapack.

In a presentment by the Ethics and Grievance Committee for Somerset County he is charged: (1) with commingling the trust funds of clients with funds of his own, (2) with the failure to account promptly for trust funds, (3) with using trust funds for his personal benefit—all in violation of the second paragraph of Canon 11 of the Canons of Professional Ethics—and (4) with taking flight and remaining beyond the jurisdiction for ten years as a fugitive from justice living under an assumed name, knowing that there was a criminal indictment pending against him, in violation of Canon 29 and the preamble to the Canons of Professional Ethics as well as the common-law duties of a lawyer.

In September 1942 Woodhead was indicted by the Somerset County grand jury, the indictment charging that he obtained $2,000 from William R. Quimby by false pretenses in representing that if Quimby would give him $2,000 he would obtain for Quimby as an investment a first mortgage on a certain house and lot in Peapack owned by William J. Telesco (whereas Woodhead knew that he could not obtain a first mortgage on the property because it was already encumbered), and that by color of the false pretense Woodhead obtained the $2,000 with intent to cheat and defraud Quimby.

The facts that brought on the indictment are that Telesco, who operates a beauty parlor and barber shop in his residence in Peapack, undertook to enlarge his establishment. Needing mortgage money for this purpose, he consulted Woodhead, who agreed to negotiate another mortgage loan

for him. Woodhead knew at the time that there was a first mortgage of $3,500 on part of Telesco's property. Woodhead induced Quimby to grant a loan of $2,000 secured by a first mortgage on Telesco's property. The mortgage covered two tracts, the one on which Telesco lived and carried on his business and which, as already noted, was mortgaged for $3,500, and the other which appears to have been previously unencumbered. The mortgage to Quimby did not recite any prior mortgages. Quimby insisted that the mortgage was represented by Woodhead to be a first mortgage on all the property covered thereby. Woodhead, on the other hand, claims that he explained to Quimby that part of Telesco's property was covered by another mortgage but that the remainder was free and clear. Following the execution of the mortgage Quimby delivered the mortgage money to Woodhead in two installments of $1,000 each. Woodhead did not give Quimby a title certificate or an abstract of title.

By the time the mortgage was executed the building alterations had already begun. From March 15, 1941 to February 15, 1942 Telesco paid Woodhead $690, which was to be used by Woodhead in making payments on account of the alterations. With these payments from Telesco and the mortgage money from Quimby, Woodhead received the sum of $2,690 for the specific purpose of making payments on the alterations on Telesco's property. Of these funds Woodhead disbursed the total of $1,300 at various times on Telesco's behalf, leaving $1,390 unexpended in Woodhead's care.

Some time in December 1941, or January 1942, the contractor performing the alterations abandoned the job. Subcontractors were making demands for payment, but without success. To put them off Woodhead told the various claimants that he could not get the mortgage money from Quimby. On April 3, 1942 Woodhead disappeared and on Quimby's complaint he was indicted. He continued to be a fugitive from justice for ten years. Then on September 15, 1953 he appeared and entered a plea of not guilty.

Efforts to learn Woodhead's whereabouts from his wife, his brother-in-law and people in the community were unavailing. All professed ignorance. His wife's claims that she did not know his address were negatived by the fact that he had made a deed to her of certain property in Bedminster Township that was acknowledged before a notary public in Lucas County, Ohio, on October 7, 1946.

On April 17, 1951 Woodhead's brother-in-law advised the prosecutor's office that Woodhead had made restitution to Quimby and requested that the indictment be *nolle prossed*. Quimby also appeared about the same time and signed a formal request addressed to the court for a *nolle prosse*, which, of course, was not agreed to by the county prosecutor.

On July 24, 1951 Woodhead commenced negotiations, again through his brother-in-law, to settle his claims with his former client Telesco. On March 10, 1953 the county prosecutor conferred with Woodhead's wife and his brother-in-law and advised them that he would continue his efforts to locate Mr. Woodhead and have him extradited to New Jersey. A month later he received a letter from Woodhead giving the address "c/o Ned H. Palmer, 1552 N. LaSalle St., Chicago, Ill." The prosecutor then wrote Woodhead by registered mail, giving the Palmer address, and received a return receipt card bearing a signature purporting to be that of Ned H. Palmer. In answering Woodhead the prosecutor said it would be impossible to dismiss the indictment and it would be well for Woodhead to arrange to have an attorney represent him and return here to meet the indictment. To this letter Woodhead replied under date of May 18, 1953 with the date line of Chicago but no address other than a postscript saying, "My Chicago address is no longer good." On August 3, after the prosecutor had a conference with Mrs. Woodhead and told her she had better urge her husband to make an early return, Woodhead wrote from Monroe, Michigan, indicating that he would appear to answer the indictment on September 15, 1953, which he did.

Before the Ethics and Grievance Committee Woodhead claimed that he left the jurisdiction for reasons unrelated

to the Quimby-Telesco affair. He admitted that he learned through his wife of the indictment about two and a half years after it was returned. He claimed that he did not consider himself a fugitive from justice though he testified he was familiar with the laws of the State, both civil and criminal. He admitted that for the ten years he was absent from New Jersey he went under the assumed name of William S. Reid.

At the oral argument Mr. Woodhead admitted that he did not deposit the trust funds committed to him by Quimby and Telesco in a trust account. He justifies this by saying that he kept the $2,000 given him by Quimby in cash in his own possession, apparently thinking—erroneously—that this was less a conversion than a deposit in his own account would have been.

Woodhead admitted that he had disbursed only $1,400 of the $2,000 he received from Quimby for the use of Telesco. He claims that he deducted $65 as an attorney's fee and that he left the remaining $535 with his father to be called for by Telesco when the work on Telesco's property was finished. There is no proof of the depositing of this sum with Wood-head's father and Telesco was never told of this arrangement. The father is now dead. The Ethics and Grievance Committee concluded that Woodhead "left the State of New Jersey with the $535, used the same for his own benefit and remained out of the state until the money had been repaid by him to the said William Telesco." The finding of the committee was inevitable.

The charges in the presentment have all been amply proved in the testimony before the committee, and if the standing of the bar as an honorable profession is to be maintained, we have no choice but to strike the name of the respondent from the rolls of attorneys-at-law and counsellors-at-law. An order to that effect will be entered.

*For disbarment*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For two-year suspension*—Justice HEHER—1.